UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NOR-CAL MOVING SERVICES,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>PAYLOCITY CORP.,<br><br>　　　　　　Defendant. | Case No. 25-cv-02085-RFL<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>Re: Dkt. No. 18 |

　　　　Plaintiff Nor-Cal Moving Services ("Nor-Cal") alleges that Defendant Paylocity Corporation ("Paylocity") breached its contractual obligations to provide accurate and legally compliant payroll processing services. Specifically, Nor-Cal contends that Paylocity implemented an unlawful time-rounding policy in violation of California wage and hour laws, despite assurances that it would use due care and comply with applicable legal requirements. As a result, Nor-Cal was named as a defendant in a wage and hour class action and now brings suit against Paylocity for breach of contract, breach of the implied covenant of good faith and fair dealing, intentional and negligent misrepresentation, unfair business practices under California's Unfair Competition Law, contribution, and equitable implied indemnity.

　　　　Paylocity moves to dismiss the First Amended Complaint ("Complaint") for failure to state a claim. (Dkt. No. 15 ("FAC").) The motion is **GRANTED IN PART AND DENIED IN PART WITH LEAVE TO AMEND.** This order assumes the reader is familiar with the factual allegations, applicable legal standards, and the arguments made by the parties.

　　　　*Choice of Law.* Paylocity urges the Court to apply Illinois law based on the Illinois choice of law provision in the Agreement. Nor-Cal contends that it will develop evidence to

1

show that the Illinois choice of law provision is unenforceable, and that California law should be applied to interpret the agreement. The Court declines to resolve the choice of law issue at this time, as the outcome under either Illinois or California law is the same. To avoid duplication of analysis, California law will be applied where it is substantially similar to Illinois law.

   ***Breach of Duty of Good Faith and Fair Dealing.*** Nor-Cal fails to state a claim for breach of the implied covenant of good faith and fair dealing under either Illinois or California law. "[B]reach of the covenant of good faith and fair dealing is not an independent cause of action under Illinois law except 'in the narrow context of cases involving an insurer's obligation to settle with a third party who has sued the policy holder.'" *APS Sports Collectibles, Inc. v. Sports Time, Inc*. 299 F.3d 624, 628 (7th Cir. 2002). This narrow exception does not apply here.

   Under California law, claims for breach of the implied covenant of good faith and fair dealing "may be disregarded as superfluous" if the allegations "do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action." *See, e.g.*, *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (Cal. Ct. App. 1990). Here, the facts alleged to support Nor-Cal's breach of implied covenant claim are nearly identical to those used to support its breach of contract claim. (*Compare* FAC ¶ 30, *with* FAC ¶ 34.) Nor-Cal argues that its implied covenant claim is additionally based on the "knowing misrepresentations in Defendant's publicly available commercial literature, including without limitation on its website, that it did not utilize rounding," which Nor-Cal allegedly relied on "at the time of its entry into the [] Agreement." (Dkt. No. 23 at 12; FAC ¶ 17.) But an implied covenant claim cannot lie in Paylocity's alleged conduct during negotiations prior to entry into the Agreement. *See McClain v. Octagon Plaza*, LLC, 159 Cal. App. 4th 784, 799 (Cal. Ct. App. 2008) (explaining that the implied covenant is a "supplement to an existing contract" and "does not require parties to negotiate in good faith prior to any agreement").

   ***Intentional Misrepresentation.*** As a preliminary matter, dismissal of Nor-Cal's intentional misrepresentation claims based on the statute of limitations is not warranted. In both

California and Illinois, the statute of limitations on a fraud claim begins to run when the plaintiff discovers or should have discovered, through the exercise of reasonable diligence, that they have been injured. *Singletary v. Continental Ill. Nat'l Bank & Tr. Co. of Chi.*, 9 F.3d 1236, 1240 (7th Cir. 1993); *Unpingco v. Hong Kong Macau Corp.*, 935 F.2d 1043, 1045 (9th Cir. 1991). Paylocity argues that Nor-Cal should have discovered the rounding issue when it allegedly started in 2016 for two reasons. First, the Agreement stated that it is "[Nor-Cal's] responsibility to review the processed payroll and other information and to promptly identify any errors." (Dkt. No. 15-1 at 4.) Second, Paylocity points out that a Nor-Cal employee was able to discover the meal-break rounding error by examining the data, so the error should have been readily apparent if Nor-Cal had examined employee records earlier. (Dkt. No. 15-3 at 4.) By contrast, Nor-Cal alleges that it only discovered the rounding policy eight months after being sued for violations of the California Labor Code, and after "extensive analysis of the underlying employee timekeeping records[.]" (FAC ¶¶ 19-21.) Whether Nor-Cal should have discovered the rounding issue before the statute of limitations expired (*i.e.*, before 2021, assuming a 5-year statute) is a fact-intensive issue that will turn on the specifics of what information was available to Nor-Cal, how readily apparent the errors were, and what constitutes reasonable diligence under the circumstances. At this stage of the case, Nor-Cal's allegation that "Nor-Cal had no knowledge that this policy was in place, and had no reason to suspect that this policy was in place, until it was revealed as part of a Class Action against Nor-Cal" is adequate, and is plausible based on the factual allegations regarding the nature of the errors. (FAC ¶ 18.)

Nor-Cal has adequately pled intentional misrepresentation as to Paylocity account manager Tanya Filsaima's July 18, 2024 statement, but not as to any of the other alleged statements. The essential elements of intentional misrepresentation are: (1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of the falsity; (3) intent to defraud, *i.e.*, to induce reliance; (4) actual and justifiable reliance by the plaintiff; and (5) resulting damage. *Berry v. Frazier* (2023) 90 Cal. App. 5th 1258, 1268; *see also Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 496 (1996).

Nor-Cal first alleges that that Paylocity engaged in intentional misrepresentation when it (1) made "assurances of accurate timekeeping" at "the time of its entry" into the Agreement; (2) "advertis[ed]" on its website, at the time of entry into the Agreement, that it "accurately and precisely tracks employee time"; and (3) promised "upon entering into the [Agreement]" "to provide Nor-Cal with accurate and legally compliant employee timekeeping, payroll processing, associated services and to exercise 'due care' in doing so." (FAC ¶¶ 17, 38.) But Nor-Cal has not sufficiently pled that these statements are false, or that Paylocity *knew* that those statements were false when made. Nor-Cal does not allege that the Paylocity system is not capable of accurate timekeeping that is legally compliant. Nor does it allege any facts showing that Paylocity knew that it would not use due care or perform accurate timekeeping for Nor-Cal's employees at the time of the Agreement. That Paylocity is alleged to have subsequently broken these promises is not sufficient, without more, to support the necessary plausible inference as to Paylocity's prior state of mind. *See Rhub Commc'ns, Inc. v. Karon*, No. 16-cv-06669-BLF, 2017 WL 3382339, at *10 n.6 (N.D. Cal. Aug. 7, 2017).

In its opposition, Nor-Cal identifies five more statements alleged in the FAC and incorporated by reference into the intentional misrepresentation claim:

- Statements in the Agreement that Paylocity would correct errors caused by Paylocity equipment. (Dkt. No. 15-1 at 4.)
- Tanya Filsaima's admission on July 18, 2024 that Paylocity had no ability to audit its time and labor software to determine when specific policies were enabled or who enabled them. (FAC ¶ 15.)
- Tanya Filsaima's statement in the same July 18, 2024 email: "It's important to note that the ruling by the California Supreme Court pertains specifically to meal breaks and prohibits rounding for these breaks. The configurations set for your specific company applied rounding to clock-in and clock-out times, but no settings were configured for meal breaks. Therefore, the configurations you requested to remove were compliant with CA regulations." (FAC ¶ 22; Dkt. No. 15-2 at 2.)
- Tanya Filsaima's admission on July 18, 2024 that Paylocity knew that rounding meal period times was unlawful in California (FAC ¶22; Dkt. No. 15-2 at 2), although rounding "may have been established since the beginning of [the Agreement, *i.e.*, since 2016]." (FAC ¶ 15.)
- Paylocity employee Lorelei Salt's admission on August 23, 2024 to Plaintiff's payroll manager Jaime McGuire-Brougham that Nor-Cal's employee meal times had been

4

rounded due to a Paylocity error. (Dkt. No. 15-3 at 2.) With the exception of the third statement (that is, Filsaima's July 18, 2024 statement about the rounding configurations), those statements suffer from the same deficiencies as the statements above. As to the first statement, there are no allegations that Paylocity knew that it would fail to correct errors caused by Paylocity equipment at the time of the contract. Indeed, the allegations reflect that Paylocity attempted to correct the errors once they were discovered in 2024. And though the allegations suggest that Paylocity's error-tracing capabilities were wanting (*i.e.*, Paylocity allegedly could not provide an audit trail to identify who enabled the rounding feature and when), that does not support an inference that Paylocity knew for a fact that its systems could not correct errors. The last two statements fare no better, as they are not alleged to be false, and in fact appear to be true statements based on the other allegations of the Complaint.[1]

However, Filsaima's July 18, 2024 statement that any rounding configuration only applies to clock-in and clock-out times because California law did not allow rounding for meal periods is a plausible fraudulent misrepresentation. Nor-Cal has adequately alleged that this statement conveyed the message that rounding had not been implemented for clocking in and out of meal periods, and that this message was false. While Nor-Cal does not allege specific facts supporting actual knowledge of falsity, "false representations made recklessly and without regard for their truth . . . are the equivalent of misrepresentations knowingly and intentionally uttered." *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 953 (1997), *as modified* (July 30, 1997). Given that Nor-Cal alleges that it had asked Paylocity to stop "any and all rounding" (FAC ¶ 47), and that Paylocity made statements indicating its awareness that rounding meal period times was unlawful in California, Filsaima's statement is plausibly alleged to have been made with reckless disregard for the truth and a reckless disregard that Nor-Cal would be misled. This allegation, moreover, is sufficiently pled under Fed. R. Civ. Pro. 9(b), as Nor-Cal has pled specifically the details of the statement and the facts supporting an inference of reckless disregard.

---

[1] For the same reason, these statements are insufficient to support a negligent misrepresentation theory.

Nor-Cal has also sufficiently pled reasonable reliance on Filsaima's statement, which was allegedly made by Paylocity's account manager—a person with authority and specialized knowledge. To the extent Paylocity argues that Nor-Cal's reliance on this statement was not reasonable due to its contractual duty to review the processed payroll records and promptly identify any errors, that is not an issue that can be determined as a matter of law based on the pleadings.

***Negligent Misrepresentation.*** As discussed above, the statute of limitations does not bar this claim. Nor-Cal has sufficiently stated a claim for negligent misrepresentation with respect to Paylocity account manager Tanya Filsaima's July 18, 2024 statement, but not as to the other statements discussed above. The elements of negligent misrepresentation are (1) the misrepresentation of a past or existing material fact; (2) without reasonable ground for believing it to be true; (3) with intent to induce another's reliance on the fact misrepresented; (4) justifiable reliance on the misrepresentation; and (5) resulting damage. *Apollo Capital Fund, LLC v. Roth Capital Partners, LLC*, 158 Cal. App. 4th 226, 243 (2007). Nor-Cal has not adequately alleged that Paylocity's assurances that it would provide Nor-Cal with accurate and legally compliant services and to exercise "due care" in doing so were negligent misrepresentations. Unlike in *Prettybird LLC v. Venegas*, No. 21SMCV00832, 2023 Cal. Super. LEXIS 2551, at *8 (2023), Nor-Cal has not sufficiently alleged facts that would support a plausible inference that Paylocity lacked a reasonable belief that its promises would be upheld, as discussed above. *Contrast id.* (finding misrepresentation adequately alleged when defendant promised that it would use "industry standard security methodologies" when its systems did not support these methodologies at the time of the agreement). The allegations, however, support a plausible inference that Filsaima's belief that rounding did not apply to meal breaks was not reasonable, for the reasons identified above.

***Unfair Competition Law ("UCL").*** Nor-Cal has sufficiently pled its unfair business practices claim under the UCL. Nor-Cal has alleged at least one actionable misrepresentation. *See People v. Dollar Rent-A-Car Sys.*, 211 Cal. App. 3d 119, 129 (1989) ("False and misleading

6

representations necessarily constitute unfair business practices within the meaning of [Section 17200.]"). Moreover, Nor-Cal has sufficiently alleged that Paylocity's conduct of rounding times for meal breaks caused a violation of California labor laws and undermined the policy behind those laws.

*Contribution.* Nor-Cal's contribution claim is not adequately pled under either California law or Illinois law. California contribution claims only apply where "a money judgment" had been "rendered jointly against" the proposed contributors (*i.e.*, Nor-Cal and Paylocity). *Coca-Cola Bottling Co. v. Lucky Stores, Inc.*, 11 Cal. App. 4th 1372, 1378, 1380 (Cal. Ct. App. 1992). But Nor-Cal does not allege that a money judgment was rendered against Paylocity in the September 2023 lawsuit.

To plead contribution under Illinois law, a plaintiff must show that the defendant has a liability in tort to the injured party, determined at the time of the injury to the initial plaintiff. *Raab v. Frank*, 157 N.E.3d 470, 474 (Ill. 2019). Nor-Cal alleges no facts showing that Paylocity was liable in tort to Nor-Cal's employees in the September 2023 lawsuit. In fact, courts have made clear that payroll companies do not generally have "a tort duty of care with regard to the obligations owed to an employee under the applicable labor statutes and wage orders." *Goonewardene v. ADP, LLC*, 6 Cal. 5th 817, 821 (2019). While Paylocity may be liable in tort to Nor-Cal, which in turn may have caused Nor-Cal to violate labor laws and injure its employees, there is no basis to conclude that tort liability to a third party other than the injured party can form the basis of a contribution claim.

*Equitable Implied Indemnity.* For similar reasons, Nor-Cal's equitable implied indemnity claim fails, and indeed, appears to have been abandoned on reply. The doctrine of equitable implied indemnity has been explicitly abolished in Illinois. *See Mollfulleda v. Phillips*, 882 F. Supp. 689, 693 (N.D. Ill. 1994).

Under California law, equitable indemnity "permit[s] a concurrent tortfeasor to obtain partial indemnity from other concurrent tortfeasors." *Am. Motorcycle Ass'n v. Superior Ct.*, 20 Cal. 3d 578, 598 (1978). Equitable indemnity also encompasses claims for implied contractual

indemnity, which exists where "two parties in a contractual relationship were both responsible for injuring a third party." *Prince v. Pac. Gas & Elec. Co.*, 45 Cal. 4th 1151, 1159 (2009). However, implied contractual indemnity is not available "in the absence of a joint legal obligation to the injured party." *Id.* at 1160. As explained above, Nor-Cal has not alleged that Paylocity owed Nor-Cal's employees a tort duty of care with respect to the obligations imposed by labor laws and wage orders. Nor can it be inferred from the allegations of the Complaint that Paylocity owes a duty in contract to Nor-Cal's employees; indeed, the Agreement explicitly states that "[Nor-Cal] agrees that Paylocity has no obligations to third parties, including [Nor-Cal's] employees and any third party agencies" (Dkt. No. 15-1 at 4). *See also Patton v. Experian Data Corp.*, No. SACV 17-01559-JVS(DFMx), 2018 WL 6184773, at *3 (C.D. Cal. Sept. 12, 2018).

Based on foregoing, Paylocity's motion to dismiss is **GRANTED IN PART AND DENIED IN PART**. Dismissal is with **LEAVE TO AMEND**, as this is Nor-Cal's first opportunity to amend with the benefit of the Court's identification of the above deficiencies and the record is insufficient to conclude that amendment would necessarily be futile. Nor-Cal may file a second amended complaint correcting the deficiencies identified in this order as to those claims by **August 6, 2025**. Nor-Cal may not add new claims or otherwise amend its complaint absent leave of the Court or stipulation by the parties pursuant to Federal Rule of Civil Procedure 15. If Nor-Cal does not file a second amended complaint by that date, the case will proceed on the First Amended Complaint.

**IT IS SO ORDERED.**

Dated: July 23, 2025

RITA F. LIN
United States District Judge