UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NOR-CAL MOVING SERVICES,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>PAYLOCITY CORP.,<br><br>　　　　Defendant. | Case No. 25-cv-02085-RFL<br><br>**ORDER DEFERRING RULING ON ANTI-SLAPP MOTION TO STRIKE**<br><br>Re: Dkt. No. 40 |

　　　　Nor-Cal is a moving services company. It contracted with Paylocity to provide it employee payroll and time-tracking services. Allegedly, unbeknownst to Nor-Cal, Paylocity rounded employee time in violation of California law. Current and former Nor-Cal employees accordingly sued Nor-Cal. Nor-Cal subsequently discovered Paylocity's rounding practice and commenced this action to recover. In answering Nor-Cal's complaint, Paylocity brought a single counterclaim for breach of contract, alleging that Nor-Cal breached the parties' agreement. (*See* Dkt. No. 37 (the "A&C").) Nor-Cal now moves to strike the counterclaim under California's anti-SLAPP statute. (*See* Dkt. No. 40 (the "Motion").) For the reasons set forth below, the Court **DEFERS** ruling on the Motion until after Paylocity has had a chance to amend its counterclaim.[1]

**I.　　CHOICE OF LAW**

　　　　Paylocity argues that Illinois's (and not California's) anti-SLAPP statute applies to this case. It points to the choice of law clause in the parties' agreement: "This Agreement shall be construed according to the laws of the State of Illinois . . . ." (Dkt. No. 31 at 15.) Because

---

[1] All citations to page numbers in filings on the docket refer to ECF page numbers.

1

subject matter jurisdiction in this case is based on diversity jurisdiction, California's choice of law rules apply. *See Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002).

When it comes to matters of procedure, California's choice of law principles require the application of the forum state's law. *See Arno v. Club Med Boutique Inc.*, 134 F.3d 1424, 1425-26 (9th Cir. 1998); *Saw v. Avago Techs. Ltd.*, 51 Cal. App. 5th 1102, 1108 (2020); *Airs Aromatics, LLC v. CBL Data Recovery Techs., Inc.*, 50 Cal. App. 5th 1009, 1016 (2020). Both the California and Illinois anti-SLAPP statutes are procedural. *See Soukup v. Law Offs. of Herbert Hafif*, 39 Cal. 4th 260, 280 (2006); *Shoreline Towers Condo. Ass'n v. Gassman*, 404 Ill. App. 3d 1013, 1023 (2010). Accordingly, under California's choice of law principles, California's anti-SLAPP statute applies. *See, e.g.*, *Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 151-56 (2d Cir. 2013) (under California choice of law rules, district court erred in declining to apply California anti-SLAPP statute as a procedural rule); *accord United Tactical Sys., LLC v. Real Action Paintball, Inc.*, 143 F. Supp. 3d 982, 999-1001 (N.D. Cal. 2015) (following *Liberty*). The parties' agreement does, of course, provide that Illinois law governs, but while "California courts generally apply the substantive law of the foreign jurisdiction identified in a contractual choice-of-law provision, [] they apply California law to procedural matters." *Coefficient Grp. Holding Ltd. v. Solana Labs, Inc.*, No. A170620, 2025 WL 1510934, at *3 n.1 (Cal. Ct. App. May 28, 2025) (citation omitted); *see also Kim v. Kim*, No. 1-15-3296, 2016 WL 7014095, at *6 (Ill. App. Ct. Nov. 30, 2016) ("Generally, choice-of-law provisions are given their full effect in Illinois on issues of substantive law; procedural matters, however, are governed by the laws of the forum state." (citation omitted)). The choice of law clause here also lacks any indication that the parties intended it to encompass Illinois's procedural law, as it merely provides that the contract "shall be construed according to the laws of the State of Illinois." (*See* Dkt. No. 31 at 15.)

At first blush, there may appear to be some tension between the recognition of California's anti-SLAPP statute as procedural and its application in federal court. After all, generally, "federal courts sitting in diversity apply state substantive law and

2

federal procedural law." *In re Cnty. of Orange*, 784 F.3d 520, 527 (9th Cir. 2015) (citation omitted). But a state law that is substantive for purposes of its application in a federal diversity suit may nevertheless be procedural for purposes of California's choice of law analysis. *See Liberty*, 718 F.3d at 152. In determining whether to apply state law in a diversity action, federal courts apply federal law and do not rely on whether state law treats the rule as procedural or substantive. *See id.* Instead, federal courts weigh the "policies underpinning the applicable state and federal laws," the need to discourage forum-shopping, and the desire to avoid the inequitable administration of law. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 839-40 (9th Cir. 2020). Applying that standard, the Ninth Circuit has long held that California's anti-SLAPP statute applies in federal diversity cases. *See United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 973 (9th Cir. 1999). As such, California's anti-SLAPP statute is both properly applied in this federal action and considered procedural under California's choice of law principles, such that it applies despite the contractual choice of law provision.

## II. ANTI-SLAPP ANALYSIS

A California anti-SLAPP motion to strike proceeds in two steps:

> The defendant must first make a prima facie showing that the plaintiff's suit arises from an act by the defendant made in connection with a public issue in furtherance of the defendant's right to [petition or] free speech under the United States or California Constitution. Second, if the defendant has made such showing, [the Court must] evaluate whether the plaintiff has establish[ed] a reasonable probability that the plaintiff will prevail on his or her . . . claim.

*See Sarver v. Chartier*, 813 F.3d 891, 901 (9th Cir. 2016) (citations and quotation marks omitted). Here, after performing each step, the analysis counsels in favor of granting the Motion.

### A. Step One: Paylocity's Counterclaim Arises from Protected Activity

At Step One, "the critical point is whether [Paylocity's] cause of action itself was *based on* an act in furtherance of [Nor-Cal's] right of petition or free speech." *See City of Cotati v. Cashman*, 29 Cal. 4th 69, 78 (2002) (citations omitted). That protected activity must "suppl[y]

one or more elements of [Paylocity's] [counter]claim[]." *Wilson v. CNN, Inc.*, 7 Cal. 5th 871, 887 (2019) (citations omitted).  Commencing this action against Paylocity constitutes activity in furtherance of Nor-Cal's right of petition.  *See Bonni v. St. Joseph Health Sys.*, 11 Cal. 5th 995, 1024 (2021).  The Step One analysis thus turns on whether Nor-Cal's filing this suit supplies any of the elements of Paylocity's breach of contract counterclaim.

To succeed on its counterclaim under either California or Illinois law, Paylocity will have to show, among other things, that Nor-Cal breached the parties' contract, and the breach resulted in damages to Paylocity.  *See Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011); *Ivey v. Transunion Rental Screening Sols., Inc.*, 215 N.E.3d 871, 877 (Ill. 2022).  Nor-Cal's protected activity of suing Paylocity supplies both elements.

Paylocity identifies three alleged breaches in its counterclaim:  (1) Nor-Cal did not "review each and every payroll run for accuracy" or provide accurate "inputs" and "data" to Paylocity; (2) Nor-Cal did not "indemnify and hold Paylocity harmless for all losses, damages and expenses, including reasonable attorneys' fees, in connection with any claim which may arise out of or as a result of the [parties' contract] or the duties assumed by Paylocity under the" parties' contract; and (3) Nor-Cal commenced this lawsuit outside the two-year limitations period set by the parties' contract.  (*See* A&C at 22-24 ¶¶ 59, 61-62, 67-68.)  As for the second and third breaches, Nor-Cal commencing this action supplies the breach element of the counterclaim, as Nor-Cal purportedly breached the parties' contract by filing this lawsuit in alleged violation of contractual indemnification and limitations period provisions.  As for the first breach, Nor-Cal commencing this action supplies the damages element of the counterclaim.  While Paylocity does not specify the harm it purportedly suffered as a result of Nor-Cal's alleged breaches, it appears, based on the A&C, that the only harm Paylocity suffered is the expense incurred in defending itself in this litigation. (*See also* Dkt. No. 41 at 12 (in opposition brief, Paylocity identifying "the expenditure of attorneys' fees in connection with [its] defense of [this] lawsuit" as example of breach of contract damages).)  Indeed, it seems that Paylocity brings its counterclaim precisely because Nor-Cal sued it.  Paylocity identifies a causal chain in which

Nor-Cal allegedly breached the contract by failing to "perform its obligations" (the first breach), "leading to Nor-Cal being named in a wage and hour class action brought by Nor-Cal employees," after which Nor-Cal further breached the contract by "seeking to hold Paylocity liable for Nor-Cal's errors" (the second and third breaches). (*See* A&C at 23 ¶ 61.)

Accordingly, Paylocity's counterclaim arises from Nor-Cal's protected activity of filing this lawsuit.

## B. Step Two: Paylocity Has Not Shown a Reasonable Probability of Success

At Step Two, "the burden shifts to [Paylocity] to demonstrate the merit of the [counter]claim by establishing a probability of success." *See Baral v. Schnitt*, 1 Cal. 5th 376, 384 (2016). "If a defendant moves to strike on purely legal arguments, courts must analyze the motion under [Federal] Rules [of Civil Procedure] 8 and 12, but where a defendant asserts a factual challenge, courts must treat the motion to strike as a motion for summary judgment, triggering discovery." *Gunn v. Drage*, 65 F.4th 1109, 1120 (9th Cir. 2023) (citations and quotation marks omitted). The parties agree that Nor-Cal does not raise a factual challenge in the Motion, and so a Rule 12(b)(6) standard governs. *See Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018); *see also Deivaprakash v. Condé Nast Digit.*, No. 25-cv-04021-RFL, 2025 WL 2541952, at *1-2 (N.D. Cal. Sept. 4, 2025) (setting forth Rule 12(b)(6) standard).

As explained above, an element of Paylocity's counterclaim is damages. Yet it offers only conclusory allegations of damages in the A&C. (*See* A&C at 23-24 ¶¶ 63, 69.) Conclusory allegations of breach of contract damages do not satisfy Rule 12(b)(6). *See, e.g.*, *Murj, Inc. v. Rhythm Mgmt. Grp., PLLC*, No. 21-cv-00072-EJD, 2021 WL 5507170, at *4-5 (N.D. Cal. Nov. 24, 2021). At best, the A&C could be read as Paylocity alleging damages in the form of expenses incurred in defending itself in this action. But that harm does not qualify as breach of contract damages under either California or Illinois law. *See Navellier v. Sletten*, 106 Cal. App. 4th 763, 776-77 (2003) (litigation costs, including attorneys' fees, not recoverable as breach of contract damages "unless the agreement or a statute specifically provides for them"); *Cnty. of*

5

*Cook v. USI Ins. Servs. Corp of Ill., Inc.*, No. 1-18-1889, 2020 WL 3578556, at *30 (Ill. App. Ct. June 30, 2020) ("[T]he proper measure of damages for a breach of contract is the amount of money necessary to place the plaintiff in a position as if the contract had been performed. . . . Fees, expenses, and punitive damages are not recoverable at common law for breach of contract." (citations and quotation marks omitted)).

Another element of the counterclaim is Nor-Cal's breach.  Two of its alleged breaches are inadequately pled.  First, the two-year limitations period breach lacks non-conclusory allegations as to when the limitations period began to run.  Under the parties' contract, Nor-Cal may not bring any claim "arising under or in connection with" the contract "more than two (2) years after either Party becomes or should reasonably have become aware of the occurrence of events giving rise to the cause of action."  (*See* Dkt. No. 31 at 15.)  Paylocity alleges that Nor-Cal breached this provision by commencing this action, but it offers no allegations about when Nor-Cal became or should reasonably have become aware of the events underlying Nor-Cal's claims.  Thus, Paylocity does not sufficiently allege that Nor-Cal filed this lawsuit outside the two-year limitations period.  Second, the failure to provide inputs and data breach is insufficiently pled for the same reason.  Paylocity conclusorily alleges that Nor-Cal "fail[ed] to provide Paylocity with accurate inputs, and data," and provides no further detail.  (*See* A&C at 24 ¶ 67.)

Accordingly, Paylocity has not shown that it has a reasonable probability of success on its counterclaim.

### III.    CONCLUSION

For the foregoing reasons, the two-step anti-SLAPP analysis counsels in favor of striking Paylocity's counterclaim.  Though it seems unlikely that Paylocity would be able to cure the deficiencies in its damages allegations, the Court cannot say that amendment would be futile at this juncture, so Paylocity will be permitted an opportunity to cure the deficiencies identified above in the Step Two analysis.  Therefore, the Court **DEFERS** ruling on the Motion until after Paylocity has had an opportunity to file an amended counterclaim.  *See, e.g.*, *Mahoney v. Meta*

*Platforms, Inc.*, 710 F. Supp. 3d 771, 781 (N.D. Cal. 2024).  If Paylocity wishes to file an amended counterclaim, it shall do so by **January 5, 2026**.  The amended counterclaim may not add new counterclaims or parties, or otherwise change the allegations except to correct the identified deficiencies, absent leave of the Court or stipulation by the parties pursuant to Federal Rule of Civil Procedure 15.  If Paylocity files an amended counterclaim, then Nor-Cal may file a supplemental brief, not to exceed **three pages** in length, by **January 12, 2026**, and Paylocity may file a supplemental response, not to exceed **three pages** in length, by **January 19, 2026**.

**IT IS SO ORDERED.**

Dated: December 1, 2025

RITA F. LIN
United States District Judge